JUSTIN A. BRACKETT (HI Bar No. 9954)
515 Ward Avenue
Honolulu, HI 96814
Telephone: (808) 377-6778
Email: justinbrackettlaw@gmail.com

*Attorney for Plaintiff*
Demetre Durham

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| DEMETRE DURHAM,<br><br>    Plaintiff,<br><br> v.<br><br>NATIONAL CREDIT ADJUSTERS, LLC,<br><br>    Defendant. | CIVIL NO. 1:23-CV-00244<br><br>COMPLAINT FOR DAMAGES DECLARATORY AND INJUNCTIVE RELIEF, EXHIBITS A-C, VERIFICATION OF COMPLAINT, SUMMONS<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

### INTRODUCTION

1. This is an action for damages against the Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.

## JURISDICTION

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

3. This action arises out of Defendant National Credit Adjusters, LLC's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), in their illegal efforts to collect a consumer debt.

4. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

## PARTIES

5. Plaintiff, Demetre Durham (hereinafter referred to as "Plaintiff" and/or "Mr. Durham"), is a resident of this State, District and Division who is authorized by law to bring this action.

6. Defendant National Credit Adjusters, LLC (hereinafter referred to as "Defendant" or "NCA") is a Kansas for-profit corporation with its principal office located in Hutchinson, Kansas that regularly conducts business in the State of Hawai'i.

7. Defendant may be served by personal service upon its registered agent, to wit: National Credit Adjusters, LLC c/o Corporation Service Company, 1003 Bishop Street, Suite 1600 Pauahi Tower, Honolulu, HI 96813.

8. Other Defendants may be discovered in the course of this litigation, and Mr. Durham respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTS

9. The primary purpose of Defendant's business is the collection of debts.

10. Defendant regularly collects or attempts to collect debts owed, or due, or asserted to be owed or due to another.

11. Defendant is a debt collector subject to the provisions of the Fair Debt Collection Practices Act and the Hawai'i Revised Statutes.

12. Defendant alleges that Mr. Durham incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Haw. Rev. Stat. § 443B-1, specifically a cashcentral.com personal loan for $400.00.

13. Mr. Durham's alleged debt was sold or otherwise transferred to Defendant for collection from Mr. Durham, when thereafter Mr. Durham received collection communications and was subjected to collection acts from Defendant, all

in an attempt to collect said debt.

14. Demetre Durham (hereinafter referred to as "Mr. Durham"), is not a party to the underlying debt and did not open the alleged account or receive any benefit from it.

15. Mr. Durham has never had an account with cashcentral.com.

16. Defendant also violated the FCRA by failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's disputes to the credit reporting agencies.

### *NCA on Mr. Durham's Credit Report*

17. In January 2023, Mr. Durham accessed his credit report online and noticed NCA reporting he owed a collection.

18. Since then Mr. Durham has lodged multiple disputes with Experian and TransUnion regarding the alleged cashcentral.com/NCA debt and has had to place a freeze and fraud alert on his credit, causing him much cost, time, and stress.

19. NCA's inaccurate negative reporting has kept Mr. Durham from being approved for a credit card at USAA, an institution he has years of good credit with.

### *Initial Collection Call with NCA*

20. In response to NCA's inaccurate credit reporting Mr. Durham called NCA and spoke with a male representative.

21. Mr. Durham disputed owing the debt and asked who NCA was collecting for?

22. NCA stated that Mr. Durham did owe NCA $470 and stated they were collecting for cashcentral.com.

23. Mr. Durham explained to NCA that he had never opened an account with cashcentral.com and did not even know who they were.

24. NCA continued attempting to collect the debt from Mr. Durham and said that if he truly did not owe it, then Mr. Durham will need to contact cashcentral.com.

25. In spite of Mr. Durham's dispute, NCA continued demanding payment from Mr. Durham and attempted to have him pay a settlement.

26. NCA never sent a notice of Mr. Durham's rights under 15 U.S.C. 1692g to him.

27. Mr. Durham filed a police report with Honolulu Police Department on February 6, 2023, at a cost of $0.50. See Exhibit A.

### *February 11, 2023 Credit Reports*

28. Mr. Durham pulled his credit reports on February 11, 2023.

29. NCA was still reporting to TransUnion and Experian that Mr. Durham owed them $470.

30. In response, Mr. Durham disputed the reporting by sending dispute letters to Equifax, Experian, and TransUnion on February 13, 2023. See Exhibit B.

### *February 24, 2023 Collection Call with Cashcentral.com*

31. On February 24, 2023, Mr. Durham called cashcentral.com and again disputed the debt. He explained to Lindsey that he did not owe the debt. Lindsey then transferred him to Connie.

32. Mr. Durham spoke with Connie at cashcentral.com and again explained he did not owe the debt. Connie asked if he could prove it wasn't his debt. Although it was the correct SSN, the other information did not match Mr. Durham.

33. Mr. Durham asked Connie if cashcentral.com required a driver's license to open a loan account. Connie stated that cashcentral.com did require a driver's license to open a loan account with them. Connie acknowledged they had a driver's license number on file…TN license number 996265600…which is not Mr. Durham's driver's license.

34. Connie at cashcentral.com also stated a cell phone number was attached to the account, but again it was not Mr. Durham's cell number.

35. Connie stated the money was deposited into a Truist Bank account. Mr. Durham explained that he had never had an account at Truist Bank.

### February 27, 2023 Collection Call with NCA

36. On February 27, 2023 Mr. Durham called NCA again and spoke with Kameal. Mr. Durham informed NCA that his Social Security Number had been compromised and he did not owe the debt.

37. In response, Kameal demanded $470.56 from Mr. Durham.

38. Kameal then told Mr. Durham he must provide NCA a police report in order to dispute the debt.

### March 28, 2023 Credit Reports

39. Mr. Durham again pulled his credit reports on March 28, 2023.

40. Despite his disputes, Defendant continued to report the debt as owed.

### March 29, 2023 Collection Call with NCA

41. Mr. Durham called NCA on March 29, 2023, and spoke with a representative named Sheldon.

42. Mr. Durham again disputed owing any money to NCA and explained he did not open an account with cashcentral.com.

43. Mr. Durham asked NCA if they were collecting a debt? Sheldon said yes.

44. Mr. Durham asked NCA if they were sure they had had the right guy? Sheldon said yes…NCA was sure.

45. Mr. Durham asked Sheldon if they had a signature on file and Sheldon said no, but he could get one from cashcentral.com. Mr. Durham asked Sheldon to get the signature and provide it to him.

46. Sheldon continued attempting to collect the debt, asking Mr. Durham how he was going to make the payment on the debt?

47. Mr. Durham told NCA that his SSN had been compromised. Sheldon did not seem to believe Mr. Durham.

48. Mr. Durham understood based on NCA's comments that all of the above calls were recorded.

### *April 18, 2023 Dispute Letter to NCA*

49. Mr. Durham sent NCA a dispute letter on April 18, 2023, incurring postage. Exhibit C.

50. Mr. Durham again explained it was not his debt and requested NCA provide its records to him.

51. NCA never responded to Mr. Durham's dispute letter.

52. These calls, reportings, and letters were "communication[s]" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

53. Plaintiff has complied with all conditions precedent to bring this action.

54. Plaintiff incorporates the above facts in each and every one of the below Causes of Action.

## CAUSES OF ACTION

### *COUNT ONE: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT*

### FIRST VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: FALSE OR MISLEADING REPRESENTATIONS

55. The acts of Defendant constitute violations of the Fair Debt Collection Practices Act. Defendant's violations of the FDCPA include, but are not limited to, the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

56. Defendant's collection communications demand amounts from Mr. Durham that he never owed.

57. Mr. Durham is confused as to how Defendant determined it could demand the account balance from him and what authority it has to demand it.

58. By demanding account balances from Mr. Durham on an account he never owed, Defendant made false, deceptive, or misleading representations to Mr. Durham about the amount of money he owes.

## SECOND VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT:
## FALSE OR MISLEADING REPRESENTATIONS

59. Defendants' violations of the FDCPA also include, but are not limited to, the use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

60. Mr. Durham never owed the debt, thus Defendant's demands were all false representations about the amount of debt owed.

## THIRD VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT:
## UNFAIR PRACTICES

61. Defendants' violations of the FDCPA also include, but are not limited to, the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

62. The communications from Defendant seek amounts from Mr. Durham that he never owed.

63. The communications from Defendant assert that two different balances are owed: $470.00 and $470.56.

64. The amounts sought by Defendant in their various communications are not expressly authorized by any agreement creating the debt or permitted by law, and thus were demands in direct violation of 15 U.S.C. § 1692f(1).

65. Defendant's false representations of the character, amount or legal status of the debt are a use of a false, deceptive, and misleading representations or means in connection with collection of the debt or in an attempt to collect the debt, which is a violation of 15 U.S.C. §§ 1692e and 1692e(10), and are an unfair means to collect or attempt to collect the alleged debt in violation of 15 U.S.C. § 1692f.

### FOURTH VIOLATION OF THE FAILURE TO PROVIDE REQUISITE DISCLOSURES IN ITS ATTEMPTS TO COLLECT A DEBT, AS REQUIRED BY 15 U.S.C. § 1692g

66. The acts of Defendant constitute violations of the FDCPA. Violations by the Defendant of the FDCPA include, but are not limited to, the following: The failure to send the consumer a thirty-day validation notice within five days of the initial communication, which is a violation of 15 U.S.C. §§ 1692g, 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5) and 1692g(b).

67. Defendant communicated with Mr. Durham in early February 2023, but Mr. Durham has never received any of the requisite notices pursuant to 15 U.S.C. §§ 1692g, 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), 1692g(a)(4), or 1692g(a)(5).

68. Defendant has never informed Mr. Durham of his rights to dispute the

debt.

69. Defendant's collection tactics of communicating with Mr. Durham numerous times before sending the requisite notices pursuant to 15 U.S.C. §§ 1692g-g(a)(5) and before ever validating the debt, were overshadowing of the disclosures required by 15 U.S.C. §1692g(a).

70. The procedures maintained (i.e., actually employed or implemented) by Defendant, if any, to avoid errors under the FDCPA, failed to protect the rights of Mr. Durham when the representatives of Defendant failed to provide numerous required disclosures pursuant to 15 U.S.C. §§ 1692d(6), 1692e(11), 1692g, 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5).

71. As a result of Defendants' actions, Mr. Durham is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

### COUNT TWO: VIOLATIONS OF THE HAWAI'I REVISED STATUTES, UNFAIR OR DECEPTIVE ACTS OR PRACTICES

72. A consumer may bring an action based upon unfair or deceptive acts or practices. Haw. Rev. Stat. §480-2.

73. Any person may bring an action based on unfair methods of competition declared unlawful by Haw. Rev. Stat. §480.

74. Mr. Durham, a consumer, brings this action based upon Defendant's

unfair or deceptive acts or practices as well as its unfair methods of competition.

75. Mr. Durham has incurred actual damages as a result of Defendant's acts and practices.

### FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

76. The acts of Defendant constitute violations of the Hawai'i Revised Statutes. Violations include, but are not limited to, any false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding. Such conduct is a violation of Haw. Rev. Stat. § 443B-18(5).

77. The underlying debt was never owed by Mr. Durham.

78. The communications from Defendant demanded amounts from Mr. Durham that he did not owe.

79. By assigning different account balances, Defendant has made one or more false representations or implications of the character, extent, or amount of money owed on the account.

80. By demanding payment of a debt he never owed, Defendant made one or more false representations or implications of the character, extent, or amount of money Mr. Durham owes.

81. By attempting to collect unauthorized amounts through false and

deceptive communications, Defendant has deceived and/or misled Mr. Durham as to the amount owed.

## COUNT THREE: VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

82. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. §1681i(a)(2)(A).

83. The FCRA requires that furnishers of information like NCA conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, the furnisher must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

84. NCA knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. NCA possesses or can easily obtain substantial written materials that detail its duties as a furnisher under the FCRA.

85. Despite knowing these legal obligations, NCA acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

86. Plaintiff disputed the NCA tradeline through all three national CRAs: Experian, Equifax, and Trans Union.

87. Thereafter, the consumer reporting agencies forwarded Plaintiff's dispute to NCA, notifying NCA that Plaintiff was disputing the information it had furnished about the account.

88. NCA received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

89. NCA continued to furnish inaccurate information about Plaintiff to the CRAs, even though NCA possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

90. The inaccurate NCA reporting materially and adversely affected Plaintiff's credit standing.

91. On at least one occasion within the past two years, by example only and without limitations, Defendant NCA violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian, Equifax and Trans Union.

92. NCA violated sections 15 U.S.C. §1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. §1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. §1681s-2(a), (b), including:

a) Willfully and/or negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;
b) Willfully and/or negligently failing to review all relevant information concerning Plaintiff's dispute;
c) Willfully and/or negligently failing to report the results of investigations to the relevant consumer reporting agencies;
d) Willfully and/or negligently failing to report to the CRAs that the disputed information is indeed inaccurate;
e) Willfully and/or negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;
f) Willfully and/or negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and
g) Willfully and/or negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. §1681s-2(b).

93. NCA unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

94. NCA is a direct and proximate cause, as well as a substantial factor in causing damage and harm to Plaintiff.

95. Consequently, NCA is liable to Plaintiff for the full amount of

statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. §1681n and §1681o.

### *Summary*

96. The above-detailed conduct by Defendant and its agents in connection with collection of the debt, was conduct in violation of the provisions of the FDCPA, FCRA, and Hawaii's UDAP statute including, but not limited to, the above-cited provisions.

### **TRIAL BY JURY**

97. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant and in favor of the Plaintiff as follows:

a) Declaratory judgment that Defendant violated Mr. Durham's rights under the Fair Debt Collection Practices Act;

b) That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant in an amount to be determined at a trial by a jury;

c) That Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §1692k(a)(2);

d) That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to 15 U.S.C. §1692k(a)(3);

e) That Plaintiff be awarded actual damages pursuant to Haw. Rev. Stat. § 480-13 in an amount to be determined by a jury at trial;

f) That Plaintiff be awarded statutory damages of not less than $1,000.00 pursuant to Haw. Rev. Stat. § 480-13(b)(1);

g) That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to Haw. Rev. Stat. § 480-13;

h) An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

i) Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1) and §1681o(a)(1);

j) An award of punitive damages as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

k) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

l) That the Court declare all defenses raised by Defendant to be insufficient;

    and

m)    Such other and further relief, as may be necessary to effectuate the Court's judgment, as the Court otherwise deems just and equitable, including any pre-judgment or post-judgment interest and/or declaratory relief.

Respectfully submitted this the 7th day of June, 2023.

                                        */s/ Justin A. Brackett*
                                        Justin A. Brackett, #9954
                                        *Attorney for Plaintiff*
                                        515 Ward Avenue
                                        Honolulu, HI 96814
                                        (808) 377-6778
                                        justinbrackettlaw@gmail.com