STARN ● O'TOOLE ● MARCUS & FISHER
A Law Corporation

ANDREW J. LAUTENBACH          8805-0
KUKUI CLAYDON                 10378-0
733 Bishop Street, Suite 1900
Pacific Guardian Center, Makai Tower
Honolulu, Hawaii 96813
Telephone:  (808) 537-6100
Email:  alautenbach@starnlaw.com
        kclaydon@starnlaw.com

Attorneys for Defendant
NATIONAL CREDIT ADJUSTERS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEMETRE DURHAM,<br><br>       Plaintiff,<br><br>  v.<br><br>NATIONAL       CREDIT<br>ADJUSTERS,<br>LLC,<br><br>       Defendants. | CIVIL NO. 1:23-cv-00244-MWJS-WRP<br><br>**DEFENDANT NATIONAL CREDIT ADJUSTERS, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. 47]; CERTIFICATE OF SERVICE**<br><br>TRIAL:  February 3, 2024<br>JUDGE: Hon. Micah W.J. Smith |

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  BRIEF RECITATION OF FACTS ........................................................1

III.  OBJECTIONS TO EVIDENCE ...........................................................3

    A.  Plaintiff's credit reports are hearsay .................................................3

    B.  Individual testimony of NCA's employees does not bind NCA.....................4

IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT ...................................6

V.  ARGUMENT .....................................................................................7

    A.  Plaintiff does not present any evidence of the nature of the debt...................7

    B.  No violation of section 1692e.........................................................9

    C.  Plaintiff does not present a valid claim under section 1692c(b) ...................12

    D.  NCA did not engage in an unfair or unconscionable activities ....................16

    E.  NCA's investigations were reasonable. .........................................17

VI.  CONCLUSION...............................................................................21

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 255 (1986) .............................................................6, 7

*Baker v. Capital One Bank*,
    No. CV 04-1192-PHX-NVW, 2006 WL 173668 (D. Ariz. Jan. 24, 2006) ........4

*Blackmon v. Ad Astra Recovery Servs.*,
    No. 20-CV-800-CAB-JLB, 2021 WL 541647 (S.D. Cal. Apr. 20, 2021)
    ..................................................................................................... passim

*Bloom v. I.C. Sys., Inc.*,
    972 F.2d 1067 (9th Cir. 1992) ................................................. 8, 9, 10

*Capital Funding v. Chase Manhattan Bank*,
    2005 WL 352697, no. 01-6093 (E.D.Pa. Feb. 11, 2005) ...................................4

*Chaitoff v. Experian Info. Sols., Inc.*,
    79 F.4th 800 (7th Cir. 2023) ..............................................................20

*Donohue v. Quick Collect, Inc.*,
    592 F.3d 1027 (9th Cir. 2010)............................................................11

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
    504 U.S. 451, 456 (1992) ...................................................................7

*Feldmann v. Lakeview Loan Servicing LLC*,
    No. C20-580 MJP, 2021 WL 1627048 (W.D. Wash. Apr. 27, 2021) ................4

*Glawe v. Carpenter, Hazlewood, Delgado & Boren PLC*,
    859 F. App'x 102 (9th Cir. 2021) ......................................................8

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147, 1157 (9th Cir. 2009) ...................................... 18, 19

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) ...................................................... 18, 21

*Hi Q, Inc. v. Zeetogroup, LLC*,
    No. 22-cv-1440-LL-DDL, 2023 WL 4096224 (S.D. Cal. June 20, 2023).........5

*Hinkle v. Midland Credit Mgmt., Inc.*,
    827 F.3d 1295 (11th Cir. 2016). .......................................................19

*Jensen v. Pressler & Pressler*,
    791 F.3d 413 (3d Cir. 2015)..........................................................11

*Krajewski v. Am. Honda Fin. Corp.*,
  557 F. Supp. 2d 596 (E.D. Pa. 2008) ............................................................19

*Lake Nacimiento Ranch Co. v. San Luis Obispo County*,
  841 F.2d 872, 875 (9th Cir. 1987) ...................................................................7

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
  637 F.3d 939 (9th Cir. 2011) .........................................................................14

*Miller v. Javitch, Block & Rathbone*,
  561 F.3d 588 (6th Cir. 2009)...................................................................11, 12

*Opico v. Convergent Outsourcing, Inc.*,
  No. C18-1579RSL, 2021 WL 1611505 (W.D. Wash. Apr. 26, 2021). .............16

*Powers v. Credit Mgmt. Servs., Inc.*,
  776 F.3d 567 (8th Cir. 2015)...........................................................................11

*Reichert v. Nat'l Credit Sys., Inc.*,
  531 F.3d 1002 (9th Cir. 2008) ................................................................. 14, 15

*Richard v. Portfolio Recovery Assocs., LLC*,
  No. 4:20-CV-3037, 2022 WL 267879 (S.D. Tex. Jan. 28, 2022)....................14

*Sanders v. Circle K Corp.,*
  137 F.R.D. 292 (D. Ariz. 1991) ........................................................................5

*Slenk v. Transworld Sys., Inc.*,
  236 F.3d 1072 (9th Cir. 2001) ..........................................................................8

*Urbina v. Nat'l Bus. Factors Inc.*,
  979 F.3d 758 (9th Cir. 2020) ..........................................................................14

*Valdez v. Action Fin. Services, LLC*,
  2021 WL 5108755 (D. Nev. Aug. 3, 2021) ........................................................9

*Williams v. Enhanced Recovery Co., LLC*,
  No. 18-cv-03699-HSG, 2019 WL 3817867 (N.D. Cal. Aug. 14, 2019) ..........14

## Statutes

15 U.S.C. § 1681 ..................................................................... 5, 13, 18, 19

15 U.S.C. § 1692 .......................................................................... passim

**Rules**

Fed. R. Evid. 801 ...........................................................................................4

Fed. R. Evid. 106 ...........................................................................................3

Fed. R. Civ. Proc. 56(c)...............................................................................7

## I.    INTRODUCTION

Plaintiff Demetre Durham ("***Plaintiff***") brought this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "***FCRA***"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("***FDCPA***") and the Hawaiʻi Revised Statutes.  [Dkt. 1]. The allegations concern an allegedly fraudulent account that was opened in Plaintiff's name and eventually purchased by NCA (the "***Account***").  Plaintiff wants this Court to enter liability because Plaintiff believes any actions taken by NCA other than immediately deleting the tradeline violates the FCRA and the FDCPA, and any contact with Plaintiff violates the FDCPA by attempting to collect a debt.  The facts and case law are more complex than that, and an analysis of the case law and application of this case law to these facts show that there is no liability against NCA in this matter.

## II.    BRIEF RECITATION OF FACTS[1]

Prior to the events alleged in the Complaint, an Account in Plaintiff's name was opened on June 30, 2022, and a debt incurred, with CashCentral.com ("***CC***").  [Dkt. 46 #1].  On November 28, 2022, NCA acquired the Account. [*Id*. #4].  While Plaintiff claims this Account was opened fraudulently, there was no indication as to this fact at the time.  [*Id. #5*].

---

[1] NCA incorporates by reference its affirmative Motion for Summary Judgment and Concise Statement of Facts ("***CSF***"), filed in this matter, in Dockets 45 and 46.

1

NCA sent its initial notice letter under FDCPA § 1692g to Plaintiff on November 30, 2022 [*Id*. #6] and began reporting the Account to the credit bureaus on January 15, 2023 [*Id*. #7]. Beginning on February 3, 2023, Plaintiff called NCA and advised that he had no knowledge of the Account, and that it was fraudulent. [*Id*. #9]. NCA informed Plaintiff of NCA's fraud dispute process in response, and the information needed for NCA to conduct a fraud investigation, including a police report or other fraud affidavit. [*Id*. #10]. Plaintiff instead stated that he would contact the credit bureaus, and the call promptly ended. In response to Plaintiff's call, NCA moved Plaintiff's Account to "temporary fraud," which placed the Account into a hold for thirty (30) days. [*Id*. #12].

NCA received a dispute from Plaintiff, in the form of an Automated Credit Dispute Verification ("***ACDV***") from one or more credit reporting agencies ("***CRAs***", also known colloquially as the credit bureaus) on February 7, 2023, in which Plaintiff stated the account did not belong to him, but provided no further documentation. NCA promptly flagged the account as disputed. [*Id*. #13-15]. Plaintiff submitted another ACDV on February 13, 2023, but provided no documentation for substantiation. The account was left in "temporary fraud" and the debt was reported as disputed. [*Id*. #22, 23]. Plaintiff again submitted another ACDV on February 20, 2023 this time stating that a police report was filed with "police department #23049604" [*Id*. #26, 27], and called NCA on February 27, 2023

2

requesting NCA remove the information from Plaintiff's credit report. [*Id*. #29]. NCA informed Plaintiff that if he provided the police report, NCA could remove the disputed information, but that NCA needed proof of the police report, and offered to provide him with NCA's email address to provide to the police station so that the report could instead be emailed if needed. Plaintiff responded that he planned to contact an attorney.  [*Id*. #30-31].

On, March 15, 2023, Plaintiff submitted another ACDV claiming fraud with no supporting documentation, and called NCA on March 30, 2023 requesting original information concerning the Account, in response to which NCA advised the Account would be flagged as disputed, and information would be sent to Plaintiff's address.  [*Id*. #34, 36].  On April 18, 2023, NCA received a final ACDV with a copy of Plaintiff's police report and a fraud affidavit. [Id. #37]. Having finally received the documents substantiating Plaintiff's claim of identity theft, NCA submitted a tradeline deletion request concerning the Account, marked the Account as fraud, and closed the Account.  [*Id*. #39-40].

## III.    OBJECTIONS TO PLAINTIFF'S EVIDENCE

### A. Plaintiff's credit reports are hearsay.

Plaintiff has attached several portions of credit reports to his Motion for Summary Judgment [Plaintiff Exhs. C, D, E].  Plaintiff submits only parts of them, and thus NCA invokes Federal Rule of Evidence 106 and requests the remainder of the credit statements be submitted for the Court's consideration before they are used

3

to make any determinations.  Alternatively, the Court should strike and disregard them, as they are incomplete and do not paint a complete or accurate picture.

In addition, these documents should be entirely disregarded because they are hearsay.  Hearsay is an out-of-court assertion offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). These documents were made by a third party, Experian; they are out of court statements; they are not supported by an affidavit as to their providence, origin, or foundation; and there is no except that applies to these documents.  Courts regularly find credit reports to be hearsay and do not consider them at the summary judgment stage unless properly supported. *See, e.g., Baker v. Capital One Bank*, No. CV 04-1192-PHX-NVW, 2006 WL 173668, at *6 (D. Ariz. Jan. 24, 2006) ("Exhibit K-2 [part of Experian credit report] is thus offered to prove the truth of the matter asserted in it, and is hearsay."); *Feldmann v. Lakeview Loan Servicing LLC*, No. C20-580 MJP, 2021 WL 1627048, at *2 (W.D. Wash. Apr. 27, 2021) (striking credit reports as hearsay); *Capital Funding v. Chase Manhattan Bank*, 2005 WL 352697, *2 (E.D. Pa. Feb. 11, 2005) (affirming exclusion of credit reports as hearsay).  On this basis, the credit reports, and any statements based on the credit reports, must be stricken, and ignored by this Court.

### B. Individual testimony of NCA's employees does not bind NCA.

It is well accepted that a deposition take in accordance with Rule 30(b)(6) is create testimony that binds a company, whereas a 30(b)(1) deposition is intended to

4

"probe[] the witness's personal knowledge and recollection." *Hi Q, Inc. v. Zeetogroup, LLC*, No. 22-cv-1440-LL-DDL, 2023 WL 4096224, at *4 (S.D. Cal. June 20, 2023); *Sanders v. Circle K Corp.,* 137 F.R.D. 292, 294 (D. Ariz. 1991) ("The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation").

Plaintiff attaches a portion of the deposition of Ivan Jones, an hourly employee of NCA. However, the testimony of Ivan Jones is not binding on NCA. Further, the statements Plaintiff attempts to support with this deposition testimony—that the debt is a consumer debt—is entirely outside of Ivan Jones' knowledge. Further, Mr. Jones' testimony, as 30(b)(1) testimony based off his own recollection, is contradicted by NCA's internal records. Mr. Jones' testified:

> Q. At the beginning of the call, NCA wanted you to collect from Mr. Durham, right?
> A. That is correct.
> Q. And that's why it wasn't in a dispute status when he called in that day [March 30, 2023]?
> A. Correct.

[Dkt. 48-2 at 8]. However, NCA's account notes show the account was in and out of temp fraud repeatedly, had only recently exited fraud status prior to March 30, 2023, and was marked as disputed immediately after the call. [Dkt. 46 at 4 ¶34; Dkt. 46-2 at 4]. NCA only wanted Mr. Jones to properly handle inbound calls, and NCA cannot be said to have wanted Mr. Jones to do certain things on a phone call it did not know would occur. Further, NCA's 30(b)(6) witness testified that the account

came out of fraud status because Plaintiff never submitted any fraud paperwork within the thirty (30) day window, which further contradicts Mr. Jones' testimony.[2]

Thus, Mr. Jones' testimony, which is not binding on NCA, is not necessarily accurate, and cannot be used to establish the consumer nature of the debt, as Mr. Jones has no actual knowledge of the debt. Further, it does not show that NCA was collecting on the debt; it only shows that Mr. Jones handled an inbound call from Plaintiff and again provided him with information necessary to substantiate the fraud claim. Mr. Jones has no personal knowledge as to the nature of the debt, and therefore cannot establish consumer standing. Further, his testimony cannot be considered absent NCA's only records, which shows NCA handled the account properly. Thus, the Court should find that any testimony given in a non-30(b)(6) capacity does not bind NCA in this matter.

## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is a drastic remedy that has to be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Neither do we suggest

---

[2] Plaintiff cites to the non-binding 30(b)(1) witness testimony, instead of the binding 30(b)(6) testimony, for this issue, presumably because the 30(b)(6) testimony undercuts Plaintiff's claim that NCA moved it back intentionally to collect from Plaintiff. Exhibit K, Deposition of Lori Hess as 168:7-13 ("it had sat in the temp status for the 30 days and now the system is moving it back out. It's saying the 30 days has lapsed. Nobody has received the documentation and moved me to a permanent fraud status, so I am going to scoot back out."). The debt continued to be credit reported as disputed. *See* Additional Material Fact #38 filed concurrently herewith.

that the trial courts should act other than with caution in granting summary judgment…"). Moreover, summary judgment cannot be granted where a genuine dispute exists as to any material fact. Fed. R. Civ. Proc., Rule 56(c). "Material" facts are those which, under applicable substantive law, may affect the outcome of the case. *Anderson, supra*, 477 U.S. at 248. When ruling on summary judgment motions, the court must also view the evidence presented on the motion in the light most favorable to the opposing party. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

At the summary judgment stage, the non-movant's version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc*., 504 U.S. 451, 456 (1992). Even where the basic facts are undisputed, however, if reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied. *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987).

## V.     ARGUMENT

### A. Plaintiff does not present any evidence of the nature of the debt.

Under the FDCPA, a "consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject

of the transaction are primarily for personal, family, or household purposes. . .” *Id*. § 1692a(5).

To determine whether a loan was primarily for personal, family, or household purposes under the FDCPA, courts “examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended.” *Bloom v. I.C. Sys., Inc*., 972 F.2d 1067, 1068 (9th Cir. 1992) (cleaned up). Thus, “[c]ourts determine the debtor’s purpose as of the time the debt was incurred.” *Glawe v. Carpenter, Hazlewood, Delgado & Boren PLC*, 859 F. App’x 102, 104 (9th Cir. 2021) (cleaned up). In this analysis, “neither the lender’s motives nor the fashion in which the loan [was] memorialized are dispositive.” *Slenk v. Transworld Sys., Inc*., 236 F.3d 1072, 1075 (9th Cir. 2001) (cleaned up); *Bloom*, 972 F.2d at 1068-69.

Plaintiff presents no evidence as to the purpose of the debt at the time it was incurred. Plaintiff’s entire summary judgment motion as to the consumer status of the debt is based on how NCA allegedly treated the debt. [Dkt. 47-1 at 12]. Plaintiff relies on NCA calling Plaintiff a consumer or referring to his debt as a consumer debt in depositions as proof of this. [*Id*. at 12-13]. None of this is evidence as to the actual nature of the debt, what the funds were used for, or the purpose of the underlying loan. [*Id*. at 12]. Thus, Plaintiff has failed to establish his evidentiary burden as to this issue, and summary judgment should be denied on any FDCPA claims as Plaintiff failed to establish the consumer nature of the debt at issue. While

8

Plaintiff may try to argue that there is no evidence it is not a consumer debt, this is not sufficient for Plaintiff to carry his burden to affirmative prove the debt is a consumer debt based on the transaction itself, and not "the fashion in which the loan [was] memorialized." *Slenk*, 236 F.3d at 1075. Plaintiff has not met his evidentiary burden and cannot be awarded summary judgment on this basis.

### B. No violation of section 1692e

Plaintiff's entire argument as to why summary judgment should be granted to Plaintiff on his FDCPA claims is that he did not owe the debt in question and NCA continued to try to collect it from him. However, Plaintiff fails to present sufficient evidence or arguments to warrant granting summary judgment. Courts have likewise rejected such unsupported arguments. Courts have rejected 1692e claims related to credit reporting when an account is disputed and the collector reports the debt as disputed while awaiting further information on the debt and the dispute, as NCA did here. *Blackmon v. Ad Astra Recovery Servs.*, No. 20-CV-800-CAB-JLB, 2021 WL 541647, at *4 (S.D. Cal. Apr. 20, 2021) ("a collection agency does not have a duty to delete all references to a debt whenever such debt is contested."); *Bloom*, 972 F.2d at 1069 (finding no "false" representation when the debt collector requested further written verification that no debt was owed and immediately reported the debt as disputed); *Valdez v. Action Fin. Services, LLC*, 2021 WL 5108755, *6 ("Furthermore, Action Financial ceased collection efforts after the debt was marked as disputed

9

during the September 9, 2019, phone call. The September 2019 letter was sent at Valdez's request and the Court finds that the least sophisticated debtor would not be misled here.").

Plaintiff alleges "NCA violated the FDCPA by falsely representing the amount or legal status of any debt in violation of 15 U.S.C. § 1692e(2)(A)."  [Dkt. 47-1 at 16].  However, NCA never misrepresented the amount or legal status of a debt.  NCA told Plaintiff the amount of the debt, as it was told to NCA, and relayed the legal status of the debt to Plaintiff—that the original creditor alleged Plaintiff owed it when NCA acquired it—and relayed the legal status of the debt after Plaintiff's dispute to the credit bureaus—by reporting it as disputed.  Further, all of the calls Plaintiff has addressed have been inbound calls from Plaintiff, and thus that is not proof NCA sought to collect the debt from Plaintiff, as he initiated those calls and NCA was not placing outbound calls to him.

Plaintiff also alleges a violation of section 1692e(8), even though NCA reported the debt as disputed as soon as Plaintiff disputed it.  It is well established that "a collection agency does not have a duty to delete all references to a debt whenever such debt is contested."  *Bloom*, 972 F.2d at 1069.  Thus, Plaintiff disputing the debt—but refusing to provide the necessary documents to authenticate it—is not a violation of section 1692e(8).

10

In *Blackmon*, the Court addressed similar claims and found no liability when a collector reported a debt, alleged to be the result of identity theft, to the credit bureaus as disputed and ceased outbound collection attempts. *Blackmon v. Ad Astra Recovery Servs.*, 2021 WL 541647, at *4 ("AARS fulfilled its legal duties upon Blackmon's notification that she **disputed** the debt. . . . AARS began reporting the debt as "disputed" to the credit reporting agencies the very same day that it initially spoke to Blackmon. Despite Blackmon's failure to provide the requested documentation substantiating her fraud claim, AARS continued to report the debt as disputed and made no attempt to collect the debt from that day forward."). The evidence unrefutably establishes NCA reported the debt as disputed as soon as Plaintiff disputed it; thus, there is no violation of section 1692e(8).

Likewise, Plaintiff cannot show any allegedly false statements under section 1692e were materially false statements. The Ninth Circuit, along with most other circuit courts, have adopted a materiality requirement in section 1692e of the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-34 (9th Cir. 2010) ("false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §[] 1692e."); *see Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015); *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir. 2015); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009). Material false representations are

11

those that could "cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Id*. at 776 (internal citation omitted).

Plaintiff cannot show that any representations from NCA would have, or could have, negatively impacted the ability of the least sophisticated consumer to respond to NCA's actions.  This is because the only actions NCA took were to repeatedly explain to Plaintiff how to submit the proper documentation to substantiate the identity theft claim.  Plaintiff cannot show any material violations of section 1692e and does not allege in any way how any of NCA's allegedly false statements affected his decision making or would affect the decision making of the least sophisticated consumer.  Therefore, Plaintiff cannot establish any violations of section 1692e.

### C. Plaintiff does not present a valid claim under section 1692c(b).

Plaintiff alleges"[b]y communicating to both Plaintiff and consumer reporting agencies that such debt was owed, NCA communicated credit information which it should have known to be false and communicated to a CRA when the law prohibited such communication, violating 15 U.S.C. § 1692c(b)."  [Dkt. 47-1, 16-17].

First, there is no violation of section 1692c(b) for alleging communication with Plaintiff.  Section 1692c(b) prohibits a collector from communication with any person in connection with the collection of a debt, "other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor,

the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. §

1692c(b).  A Plaintiff cannot assert a claim for improper communications for a third

party related to communications that were sent to Plaintiff himself, even if Plaintiff

is not the actual consumer, as alleged in this case.

Further, section 1692c(b) expressly allows communication with consumer

reporting agencies.  Thus, under the statutory text of section 1692c(b), there is no

violation of this section, as NCA did not communicate with an unauthorized third-

party concerning Plaintiff.  Plaintiff's claim that the debt was invalid or otherwise

disputed does not turn NCA's permitted credit reporting into a violation of section

1692c(b).  In fact, section 1692e(8) expressly envisions a collector reporting credit

information that is disputed, including identity theft disputes. *Blackmon*, at *4 ("a

collection agency does not have a duty to delete all references to a debt whenever

such debt is contested." (internal citations omitted)).  Section 1692e(8) governs the

reporting of disputed information under the FDCPA, and there is no indication that

section 1692c(b) was intended to force companies to stop credit reporting when the

debt is disputed.  Therefore, there is no violation of section 1692c(b) in this matter.

Alternatively, any violation of section 1692e of the FDCPA, related to

attempting to collect a debt plaintiff did not owe, should be excused under the bona

fide error defense.  15 U.S.C. § 1692k(d).  Plaintiff's claim that NCA does not

believe an error occurred, does not prevent NCA from arguing the bona fide error

defense in the alternative. Multiple courts have rejected this argument raised by Plaintiff. While it is true that NCA does not believe that an error occurred, according to the Federal Rules of Civil Procedure, affirmative defenses may be pled and argued in the alternative. *Williams v. Enhanced Recovery Co., LLC*, No. 18-cv-03699-HSG, 2019 WL 3817867, at *4 (N.D. Cal. Aug. 14, 2019) ("nothing in the FDCPA's text precludes debt collectors from relying on the bona fide error defense in the alternative."); *Richard v. Portfolio Recovery Assocs., LLC*, No. 4:20-CV-3037, 2022 WL 267879, at *4 (S.D. Tex. Jan. 28, 2022) ("While it is true that Defendant stated that it did not believe that an error had occurred, per the Federal Rules of Civil Procedure, affirmative defenses may be pled in the alternative.").

To prevail on this defense, a debt collector must prove that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). "To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors." *Reichert v. Nat'l Credit Sys., Inc*., 531 F.3d 1002, 1007 (9th Cir. 2008) (emphasis added). "The procedures that have qualified for the bona fide error defense were consistently applied by collectors on a debt-by-debt basis." *Urbina v. Nat'l Bus. Factors Inc.*, 979 F.3d 758, 765 (9th Cir. 2020) (holding that a one-time

14

agreement committing creditor-clients to provide accurate information did not support a bona fide error defense). "The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Reichert*, 531 F.3d at 1007.

First, any violation of the FDCPA was unintentional and resulted from a bona fide error. NCA has no knowledge of any dispute or identity theft claim when it purchased the Account, and it worked with Plaintiff to try to substantiate his fraud claim once informed of the alleged fraud. Further, there is no evidence to indicate that NCA sought to collect the debt once it had any knowledge of the dispute; it ceased calling and sending letters to Plaintiff, moved the Account into fraud status, and reported the debt as disputed. [Dkt. 45-1 at 11-13]. Thus, the first two elements of the bona fide error defense are established.

NCA has policies and procedures designed to ensure accounts it purchases are accurate, valid, and owing. [Dkt. 46-1 ¶¶ 86-89]. Further, NCA has contractual requirements with every entity it purchases any debts from requiring the debts by accurate, valid, and owing. NCA does not solely rely on this representation, as NCA also performs necessary due diligence into the entities it purchases from, including investigating their data and lending models prior to purchasing any accounts. [*Id*.]. Further, NCA performs scrubs on an individual basis upon the accounts being loaded into its system, including scrubs for bankruptcies and deceased debtors. [*Id*.]. NCA

also maintains vendor services that update addresses and other contact information on a debt-by-debt basis as necessary, which can be used to conduct further reviews of accounts as required. [*Id*.].  Finally, NCA has policies and procedures in place to handle claims of identity theft and fraud, as addressed herein.  [*Id*. ¶¶ 70-89].

Here, NCA performed scrubs on the account, including whether Plaintiff was deceased or in bankruptcy.  It received notice of a change of address related to Plaintiff. Further, it had contractual requirements with the CashCentral that the CashCentral only sell and place valid accounts with NCA accompanied by account media to support the origination of the accounts. [Dkt. 49, ¶¶ 86-89].

On this basis, NCA has established at least a fact issue as to all three elements of the bona fide error defense, and to the extent the Court finds any liability under the FDCPA, it was the result of a bona fide error notwithstanding the maintenance and use of reasonable procedures designed to avoid.

### D. NCA did not engage in an unfair or unconscionable activities.

Plaintiff asserts a claim under section 1692f(1) of the FDCPA, claiming NCA violated this section "by attempting to collect an amount which is not expressly authorized or permitted by law." [Dkt. 47-1 at 17].  Another court addressed similar claims in *Opico*, in which the plaintiff asserted claims under 1692f(1) against a collector for "attempting to collect money from the wrong person, the same conduct plaintiff alleged in support of its § 1692e argument." *Opico v. Convergent*

*Outsourcing, Inc.*, No. C18-1579RSL, 2021 WL 1611505, at *9 (W.D. Wash. Apr. 26, 2021).  First, the court found that section 1692f(1) primarily concerned claims in which the collector misinterpreted the amount owed under the agreement, and not to situations in which the plaintiff claimed they did not owe the debt at all.  [*Id.*].  Thus, to the extent that Plaintiff alleges a claim under section 1692f(1) related to NCA collecting a debt that Plaintiff allegedly never owed, section 1692f(1) is inapplicable and should be dismissed.

Further, none of NCA's actions could be considered "unfair" or "unconscionable."  NCA attempted to work with Plaintiff to obtain the police report, but Plaintiff refused; NCA provided information regarding its dispute process; and NCA marked the Account as disputed and placed it in both temporary fraud and attorney contact only so that Plaintiff would not receive any calls or letters.  Thus, there is nothing unfair or unconscionable to base a section 1692f(1) claim on, when NCA had no advance knowledge of any fraud, treated the Account as disputed, and worked with Plaintiff to receive the proper documentation.  Summary judgment should be denied to Plaintiff on this basis.

### E. NCA's investigations were reasonable.

The FCRA regulates how furnishers must respond to a notice of dispute from a credit reporting agency. Among other things, the furnisher must correct or delete inaccurate information after conducting an "investigation with respect to the

17

disputed information." 15 U.S.C. § 1681s-2(b). That "investigation" must be at least "reasonable" and "non-cursory." *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1157 (9th Cir. 2009).

Under the FCRA, upon receiving a dispute, furnishers must conduct a "reasonable" investigation with respect to the disputed information. *Id.* The question of whether an investigation was reasonable is a question normally resolved by a jury, given the "reasonableness" standard applied. *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995). However, if only one conclusion about the conduct's reasonableness is possible, the question can be resolved at the summary judgment stage. This is the situation at hand, and the Court should find NCA acted reasonably.

Plaintiff's entire claim FCRA boils down to his assertion that because he did not owe the debt, any credit reporting on it violates the FDCPA, and any reinvestigation which did not remove the debt violates the FCRA. In Plaintiff's view, simply saying "this debt is the result of fraud" is all that is required to get a furnisher to delete a tradeline of someone's credit report. This, of course, would be an entirely unworkable system for credit reporting, and as such courts have recognized the law does not require this. *Blackmon,* at *4 ("a collection agency does not have a duty to delete all references to a debt whenever such debt is contested."). In fact, the FDCPA expressly contemplates reporting disputed debts. Plaintiff's

broad claim that any dispute should have been sufficient to determine the tradeline was fraudulent is not supported by the law.

"Whether a reinvestigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable thus depends in large part on the allegations made by the consumer and the notice of the allegations provided to the furnisher by the consumer reporting agency." *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 610 (E.D. Pa. 2008). Thus, Plaintiff's claim that any dispute in which he alleged fraud should have been sufficient is invalid, as it is based off the information provided to the furnisher. The reasonableness of NCA's investigation must be evaluated based upon quality of documentation available to it at the time of the dispute. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

Further, the Ninth Circuit has emphasized that the requirement that furnishers investigate consumer disputes is procedural. *Gorman*, 584 F.3d at 1161 (9th Cir. 2009). "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, *even if that conclusion turns out to be inaccurate.*" *Id.* (emphasis added). The question is whether the investigation is reasonable based on the information provided to NCA in the disputes, through the CRAs, and based on the information available or obtainable by NCA. *Id*.

19

NCA's Motion for Summary Judgment and its Concise Statement of Facts set forth the complete timeline and history of the disputes received from Plaintiff. [Dkts. 45, 46]. The question is whether NCA was reasonable in not removing the tradeline prior to receiving some form of documentation authenticating the dispute, in the form of a police report, identity theft affidavit from the FTC, or any other form of affidavit. These forms are freely available online, including various forms of identity theft affidavit available from the United States' federal government. Further, NCA repeatedly offered to accept this documentation by email or other electronic means—and Plaintiff eventually submitted it via electronic means. Prior to receiving the identity theft affidavit, NCA had nothing to verify Plaintiff's claims against or to support them, and NCA cannot obtain police reports on behalf of other individuals, especially when that individual is already refusing to work with NCA to resolve the issue.

Additionally, Plaintiff cites inapplicable cases in support. For example, Plaintiff cites *Chaitoff v. Experian Info. Sols., Inc*., 79 F.4th 800, 812 (7th Cir. 2023), which addresses whether an "omission constitutes an inaccuracy under § 1681e(b) and § 1681i(a)." [Dkt. 47-1 at 21]. There are no "omissions" in dispute in this matter. NCA marked the debt as disputed as soon as it learned of a dispute. Plaintiff factual allegations state the reporting is inaccurate, not that NCA omitted anything.

Plaintiff's citation to *Frazier* also concerns omissions—but there are no omissions at issue in this case.

The issue of whether an investigation was reasonable is usually reserved for the fact finder. *Guimond.,* 45 F.3d at 1333. NCA has proven, at the minimum, that a fact issue exists as to Plaintiff's 1681s-2(b) claim, and therefore summary judgment should be denied to Plaintiff on this claim.

## VI.    CONCLUSION

Based on all available evidence in this case, no reasonable factfinder could find in Plaintiff's favor as to any of his causes of action.  At the very minimum, NCA has established fact issues as to at least one element of each claim raised by Plaintiff. The undisputed facts demonstrate NCA did everything it could be expected to do in response to his Account and his dispute.  Plaintiff's Motion for Summary Judgment should be denied in its entirety.

WHEREFORE, Defendant National Credit Adjusters, LLC, respectfully requests this Court deny Plaintiff's Motion for Summary Judgment.

DATED:  Honolulu, Hawaiʻi, October 29, 2024.

*/s/ Kukui Claydon*
ANDREW J. LAUTENBACH
KUKUI CLAYDON

Attorneys for Defendant
NATIONAL CREDIT ADJUSTERS, LLC

21