IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DEMETRE DURHAM,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL CREDIT ADJUSTERS, LLC,<br><br>Defendant. | Civil No. 23-00244 MWJS-WRP<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

Plaintiff Demetre Durham asserted that he was the victim of identity theft, and he sued Defendant National Credit Adjusters, LLC (NCA) for reporting fraudulent debt to credit reporting agencies. He brought claims under the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and parallel state laws. NCA sought summary judgment on all claims, and Durham requested summary judgment on a few.

In a prior Order, this Court issued partial rulings on the parties' cross-motions for summary judgment. ECF No. 70. The Court granted NCA's motion for summary judgment on all of Durham's FDCPA claims (save for one, in which Durham alleged that NCA failed to send an initial notice letter) and denied NCA's motion as to

Durham's FCRA reasonable investigation claims.  The Court also ordered supplemental briefing on which, if any, of Durham's state law claims survive these rulings.

After careful consideration of the parties' supplemental briefs, ECF Nos. 71 & 72, the Court concludes that no triable issues remain on Durham's state law claims, and it therefore GRANTS summary judgment to NCA on those claims.

## BACKGROUND

The Court assumes the reader's familiarity with the factual background detailed in its prior Order and repeats it only as necessary to dispose of the state law claims.

1.  Durham brought this suit in June 2023, asserting that he was the victim of identity theft, and that NCA wrongly pursued collection on a debt in his name.  *See* ECF No. 1.  He claimed that NCA also wrongfully reported that debt to credit reporting agencies (CRAs) even after Durham called NCA to dispute the debt.  In particular, Durham takes issue with the fact that NCA required him to provide proof of his identity theft claim by supplying an affidavit or a police report.  He claims that NCA already had enough information in its own records to show that the debt was not his, and that he should not have had the burden to persuade NCA that it was not his.

In its summary judgment order, the Court granted summary judgment to NCA on all but one of Durham's FDCPA claims.  ECF No. 70.  Specifically, it held that NCA did not make any "false, deceptive, or misleading representation[s]" under the FDCPA by reporting the debt to credit reporting agencies, or by telling Durham that he needed

to substantiate his identity theft claim.  15 U.S.C. § 1692e; see ECF No. 70, at PageID.743-51.  The Court determined that NCA did not make any false statements to the credit reporting agencies, nor did it mislead Durham.  And the Court further ruled that even if any of the statements were technically false, deceptive, or misleading, they were not *materially* so because in the context of the FDCPA, materiality requires that a statement would have been "likely to mislead the least sophisticated consumer."  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).  In this case, even the least sophisticated debtor would not have been led astray by NCA's reporting of the debt as "disputed" to the CRAs, nor by NCA's clear instructions about how Durham could substantiate his identity theft dispute.  The Court also found that NCA did not violate its duty under the FDCPA to identify itself as a debt collector when Durham alleged that, on at least one occasion, NCA failed to specifically state that it was a debt collector attempting to collect a debt.  ECF No. 70, at PageID.751-52.  That is because Durham was the one who called NCA, not the other way around, and he did not cite any place in the record where NCA specifically failed to identify itself as a debt collector.  *Id.*

At the same time, the Court denied summary judgment to NCA on Durham's claim that NCA failed to provide the initial notice required under the FDCPA.  Under 15 U.S.C. § 1692g(a), a debt collector must send a written notice to the consumer that contains the amount of the debt, the creditor's name, and information about how the consumer can dispute the debt within thirty days of receiving that initial notice.  On this

issue, the Court concluded that there is a dispute of material fact as to whether NCA sent the initial notice to the best address it had for Durham. ECF No. 70, at PageID.739-43. A jury therefore will have to decide whether NCA properly complied with § 1692g(a)'s requirement to "send" an initial written notice.

The Court also denied NCA's motion for summary judgment on Durham's claim that NCA failed to conduct a reasonable investigation into Durham's identity theft claim. *See id.* at PageID.733-36. It will therefore be up to a jury to determine whether NCA, as a furnisher under the FCRA, conducted a reasonable investigation into Durham's claim of identity theft after receiving notifications from the CRAs about his dispute that included information that he was challenging the debt on that basis.

2. The above rulings had implications for, but did not conclusively resolve, whether Durham's state law claims should survive summary judgment. Because the parties' briefs did not specifically address whether Durham's state law claims hinge on the same substantive legal standards as the relevant federal statutes, the Court ordered supplemental briefing on that issue. *Id.* at PageID.757.

Durham brings state law claims primarily under Hawaii's unfair or deceptive acts or practices (UDAP) law, making allegations similar to those he brought under the FDCPA: he argues that NCA engaged in a "deceptive" act or practice under Hawai'i Revised Statutes (HRS) § 480-2 (2008) by reporting that he owed a debt and by requiring

4

him to substantiate his identity theft claim.  *See* ECF No. 1, at PageID.12-13.[1]  He also alleges that NCA violated HRS § 443B-18(5) (2013), which prohibits a debt collector from making a "false representation," by communicating to him and the CRAs that he was liable for a debt he did not owe.  ECF No. 1, at PageID.13-14.  The question is whether the state law standards of deception and falsity are the same as those of the FDCPA claims, on which the Court has already granted summary judgment.

The Court has reviewed the parties' supplemental briefs on that issue, ECF Nos. 71 & 72, and it now takes up the question of whether there are any remaining factual issues for trial on the state law claims in light of its prior Order.

## DISCUSSION

As noted, Durham brings state law claims primarily under Hawaii's UDAP statute.  To recover under that law, "a consumer must prove (1) either that the defendant violated the UDAP statute (or that its actions are deemed to violate the UDAP statute by another statute), (2) that the consumer was injured as a result of the violation, and (3) the amount of damages sustained as a result of the UDAP violation."  *Kawakami v. Kahala Hotel Invs., LLC*, 142 Hawaiʻi 507, 519, 421 P.3d 1277, 1289 (2018).  Here, Durham can prevail on a UDAP claim in either of two ways.  First, he can show

---

[1]  While his complaint generally alleges a claim under HRS § 480-2 for "[u]nfair methods of competition," in his supplemental brief, Durham raises no specific legal or factual bases for evaluating whether NCA engaged in such behavior, and so the Court considers any such claims forfeited.  HRS § 480-2(a); *see* ECF No. 72.

that NCA violated HRS Chapter 443B, which "regulates and prohibits unfair debt collection practices by 'collection agencies.'" *Goray v. Unifund CCR Partners*, Civ. No. 06-00214, 2007 WL 4260017, at *10 (D. Haw. Dec. 4, 2007). That is because any "violation of Chapter 443B constitutes a violation of Section 480-2," the UDAP statute. *Id.*; *see also* HRS § 443B-20 (2013) ("A violation of this chapter by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2."). Second, Durham can show that NCA directly violated the UDAP statute by engaging in a "deceptive" act or practice.

### A.     Durham's Claims Under Hawaiʻi Revised Statutes § 443B-18

In his supplemental brief, Durham contends that NCA violated two provisions of HRS § 443B-18. The Court considers each claim in turn.

1. Durham first contends that NCA violated HRS § 443B-18(2) (2013) because its call agents failed to "assert [they were] a debt collector" during the February 6, 2023 phone call with Durham. ECF No. 72, at PageID.782. Durham argues that this claim is preserved for a jury trial on the merits because the Court held that his 15 U.S.C. § 1692g notice of debt claims could proceed. *See id.* at PageID.81-82.

But Durham nowhere alleged a violation of HRS § 443B-18(2) in his complaint. Instead, his complaint only identifies subsection § 443B-18(5)—which the Court turns to next—as the basis for a claim that NCA made a false representation. *See* ECF No. 1, at

6

PageID.13. To be sure, Durham argues in his supplemental brief that his complaint more generally stated a claim for any UDAP violation, and that the UDAP statute incorporates any violation of Chapter 443B. *See* ECF No. 72, at PageID.779-81. That argument is not persuasive because Federal Rule of Civil Procedure 8(a)(2) "requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 687 (D. Haw. 2017) (cleaned up). While Durham's supplemental brief advances the claim under HRS § 443B-18(2), his complaint did not give fair notice of such a claim. And "it is axiomatic that violations not pled in the complaint cannot be considered by this court at the summary judgment stage." *Id.* (quoting *Feezor v. Patterson*, 896 F. Supp.2d 895, 903 (E.D. Cal. 2012)). "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (cleaned up).

In any event, even if Durham could introduce a new claim at this late stage, his reliance on HRS § 443B-18(2) would still be misplaced. HRS § 443B-18 generally prohibits collection agencies from making "fraudulent, deceptive, or misleading representation[s]." Subsection § 443B-18(2)(B) specifically requires collection agencies to identify during a communication with a debtor "that the communication is from a debt collector." Durham contends that HRS § 443B-18(2) is analogous to 15 U.S.C. § 1692g(a), and he argues that any HRS § 443B-18(2) claims are preserved for trial

7

because the Court denied summary judgment to NCA on Durham's § 1692g claims.[2]

But § 1692g lays out procedural requirements for the debt validation process, including a debt collector's initial communication with a debtor. That provision is not analogous to HRS § 443B-18(2). Instead, HRS § 443B-18(2) more precisely mirrors a different provision of the FDCPA: 15 U.S.C. § 1692e(11), which requires that debt collectors identify, at any time subsequent to the initial notice, that "the communication is from a debt collector." And in its prior Order, the Court granted NCA's motion for summary judgment on Durham's § 1692e(11) claim. ECF No. 70, at PageID.751-52. The Court granted summary judgment because Durham failed to point to any specific facts in the record showing that NCA's representatives failed to identify themselves as debt collectors. *Id.* at PageID.752. The Court also noted that Durham himself made each of the calls to NCA to assert that he was the victim of identity theft and to demand that NCA stop reporting the debt. Under these circumstances, any omission by NCA representatives to identify themselves as debt collectors would have been immaterial as a matter of law. *Id.* It follows that, to the extent Durham preserved a state law claim based on HRS § 443B-18(2), summary judgment is warranted for those same reasons.

---

[2]   The Court denied summary judgment to NCA on Durham's 15 U.S.C. § 1692g(a) claims because there is a triable factual issue as to whether NCA properly complied with its obligation to send an initial notice letter. ECF No. 70, at PageID.739-43. But Durham points to no similar provision in HRS § 443B-18, or anywhere else in state law, that requires an initial notice to be sent.

Durham seeks through his supplemental brief to supply more detail to support his HRS § 443B-18(2) claim (and, by extension, his § 1692e(11) claim). Whereas in his summary judgment papers, Durham cited no particular provision of any transcript where NCA failed to identify itself as a debt collector—and the Court therefore granted summary judgment, in part, on that basis—in his supplemental briefing, Durham identifies a February 6, 2023 phone call as the offending incident. But it is too late for Durham to attempt to provide factual substantiation through his supplemental brief. That opportunity has passed—any factual substantiation should have been submitted in Durham's concise statement of facts.

In any event, the February 6, 2023 call does not provide support for his claim. As a matter of law, NCA's failure to identify itself in the February 6, 2023 call could not have been misleading, and certainly not materially so. The call did not involve a communication from NCA to Durham to collect on the debt or to collect any information from him; instead, Durham was calling NCA to inquire about, and likely to dispute, the subject debt. Moreover, in that phone call—which Durham now identifies as the single violation of this provision—the parties' conversation never progressed beyond Durham stating that he was "trying to contact NCA." ECF No. 46-5, at PageID.227. The call agent almost immediately transferred Durham to customer service, at which point Durham reached a voicemail and left a message. *Id.* It is thus clear, given that the Court already concluded that NCA's apparent failure to identify

itself as a debt collector would not be material under the federal statute, that the same conclusion follows for the state provision.

In short, even if the Court were to consider Durham's newly asserted claim, and the newly offered factual predicate for that claim, Durham has not shown that NCA violated HRS § 443B-18(2). And so, if he is entitled to a jury trial on any violation of that chapter, it must be under another provision.

2. Chapter 443B generally prohibits "collecting debts by false or deceptive means and through the use of misleading information." *Goray*, 2007 WL 4260017, at *10. Durham next claims that NCA violated HRS § 443B-18(5), which states that a collection agency may not make "[a]ny false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding." This subsection parallels the FDCPA, which prohibits a debt collector from making any "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

In its prior summary judgment Order, the Court concluded that NCA was not liable for any false representations under the FDCPA because NCA did not make a false statement about the debt, and even if it did, any such falsehood was not material because it did not affect Durham's ability to act on his rights. *See* ECF No. 70, at PageID.745-51; *see also Afewerki v. Anaya L. Grp.*, 868 F.3d 771, 773 (9th Cir. 2017) (stating that materially false statements "are those that could cause the least sophisticated

10

debtor to suffer a disadvantage in charting a course of action in response to the collection effort" (cleaned up)).  Durham's HRS § 443B-18(5) claim rests on the same arguments he presented in his initial summary judgment briefing related to his § 1692e claims.  And in his supplemental briefing, Durham does not point to any legal authority suggesting that Hawaiʻi law would provide heightened protections, above those afforded by the FDCPA, under these circumstances.  Nor has the Court identified any reason to believe that the legal standard for evaluating a claim under HRS § 443B-18(5) meaningfully differs from that applied to § 1692e claims.  *See Sivongxay v. Medcah, Inc.*, Civ. No. 16-00415, 2017 WL 5162799, at *4 n.6 (D. Haw. Nov. 7, 2017) (noting that, like the FDCPA, "Hawaii law similarly prohibits a collection agency from using fraudulent, deceptive, or misleading representations or means to collect or attempt to collect debts, including false representations as to the character, extent, or amount of a claim against a debtor" (citing HRS § 443B-18(5)); *Goray*, 2007 WL 4260017, at *12 (finding defendant did not violate HRS § 443B-18 "[f]or the same reasons that the Court found that Defendants' conduct did not violate the FDCPA").

\*   \*   \*

For the foregoing reasons, the Court GRANTS summary judgment to NCA on Durham's UDAP claims to the extent they rely on alleged violations of HRS § 443B-18.

//

//

11

## B. Durham's Claims Directly Under UDAP

Durham separately maintains that his claims brought directly under the Hawai'i UDAP statute should survive summary judgment. HRS § 480-2 prohibits "fraudulent, unfair or deceptive business practices." *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980), *overruled on other grounds*, *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i 224, 982 P.2d 853 (1999). And Durham appeals to broader UDAP principles: he argues that under Hawai'i law, "*any* act against a consumer found to be deceptive or unfair can be actionable when such an act causes the consumer to act." ECF No. 72, at PageID.783 (emphasis added). So, more generally, he contends that NCA acted unfairly or deceptively by coercing Durham to either "pay a debt he did not owe" or "provide a police report or fraud affidavit." *Id.* at PageID.784.

To recover under Hawaii's UDAP statute, "a consumer must establish three elements: (1) a violation of section 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages." *Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046, 1053 (9th Cir. 2014) (cleaned up). And to establish a violation of § 480-2, a consumer must show that a business' acts or practices were deceptive or unfair. In the UDAP context, "deceptive" means any act or practice that "is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." *Id.* (cleaned up); *see also Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1096 (D. Haw.

12

2014) ("The Hawaii Supreme Court has described a deceptive act or practice as having the 'capacity or tendency to mislead or deceive.'" (quoting *Courbat v. Dahana Ranch, Inc.*, 111 Hawaiʻi 254, 261, 141 P.3d 427, 434 (2006)). A practice is considered "unfair" under the statute "when it 'offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Aquilina v. Certain Underwriters at Lloyd's*, 465 F. Supp. 3d 1088, 1099 (D. Haw. 2020) (quoting *Balthazar v. Verizon Haw., Inc.*, 109 Hawaiʻi 69, 77, 123 P.3d 194, 202 (2005)).[3]

    Durham contends that NCA engaged in "deceptive" acts or practices by reporting that he owed a debt he did not owe, such that he only had the option to pay the debt or substantiate his claim of identity theft. ECF No. 72, at PageID.784. But the standard for determining whether a practice is "deceptive" under Hawaiʻi UDAP law is not materially different from that for considering whether a "deceptive" representation violates the FDCPA. As the Court explained when granting summary judgment to NCA on Durham's FDCPA "deceptive" representation claims, the federal statute requires a consumer to show that a statement was *materially* "deceptive"—that is, a consumer must show that a deceptive statement would have been "likely to mislead the least sophisticated consumer." *Donohue*, 592 F.3d at 1033; *see* ECF No. 70, at PageID.748-

---

[3]    Although Durham occasionally uses the word "unfair" throughout his supplemental brief, he does not argue which of NCA's practices should be considered as such—let alone why any would qualify as legally "unfair" under the governing state standard. Instead, Durham focuses his legal analysis on NCA's allegedly "deceptive" acts, and so the Court will likewise focus its analysis there.

13

51. And Hawaiʻi courts have adopted a similar materiality requirement for any "deceptive" practices under the state UDAP statute. *See Compton*, 761 F.3d at 1053 (noting that under Hawaii's UDAP statute, a statement is "deceptive" if it "is likely to mislead consumers acting reasonably under the circumstances" and the statement "or practice is material" (cleaned up)).

Durham does not suggest, and the Court sees no reason to conclude, that Hawaii's UDAP statute is any less or any more protective than the FDCPA, particularly where both incorporate the materiality standard. And so, to the extent that Durham bases his UDAP claims on the same arguments that he already advanced under the FDCPA, those arguments must fail for the same reasons. *See* ECF No. 70, at PageID.743-53.[4] Durham also appears to argue that the fact that he had to take *any* action to address the fraudulent debt is a UDAP violation. In making this argument, Durham might be alluding to the state materiality requirement, which draws on federal courts' definition of "deceptive" as "an act causing, as a natural and probable result, a person to do that which he or she would not otherwise do." *Balthazar*, 109 Hawaiʻi at 77, 123 P.3d at 202 (cleaned up); *see also Compton*, 761 F.3d at 1053 (noting that a statement "is considered

---

[4] While the Court focused, in its FDCPA analysis, on whether the statements that NCA made were "false or misleading," any analysis of a "deceptive" practice under Hawaii's UDAP incorporates any representation that "is likely to mislead" consumers. *Compton*, 761 F.3d at 1053 (cleaned up). That is, the Court's analysis of a "misleading" statement under the FDCPA fully encompasses any state law claims for "deceptive" statements.

material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product").

But Hawaii's consumer protection laws do not look at a consumer's behavior subjectively; that is, it is not enough that Durham did not want to substantiate his identity theft claim by providing an identity theft affidavit or police report to NCA. *See Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*, Civ. No. 23-00464, 2024 WL 4625719, at *4 (D. Haw. Oct. 30, 2024) ("Hawaii's consumer protection laws look to a reasonable consumer, not the particular consumer." (citation omitted)). And as the Court explained in its prior summary judgment Order, there is nothing misleading about NCA's requirement that Durham provide information to verify his identity theft claim. ECF No. 70, at PageID.749-51; *see Blackmon v. Ad Astra Recovery Servs., Inc.*, No. 20-CV-800, 2021 WL 1541647, at *5 (S.D. Cal. Apr. 20, 2021) (holding that a debt collector's representations were not materially misleading because its communications with the consumer about how to substantiate the alleged identity theft "would [not] confuse or mislead even the least sophisticated debtor's attempt to remove the fraudulent account from their credit report").

Durham advances two other factual bases for his UDAP claims. First, he argues that NCA acted deceptively by "requiring" him to provide "additional evidence" to prove his identity theft claim when NCA knew that his address had changed in February 2022, and that the loan was taken out in that former location on June 30, 2022.

15

ECF No. 72, at PageID.786; *see also id.* at PageID.785-86.  Second, he argues that once he told an NCA call agent that the driver's license number on the loan was incorrect, it was "deceptive" for NCA to maintain that the debt was his.  *Id.* at PageID.787-89.  These points mirror Durham's claims under the FCRA because he contends that if NCA had conducted a reasonable investigation based on these facts, it would have discovered that the debt was not his.  *See id.* at PageID.788.  But Durham cites to no authority showing that there is a "reasonable investigation" requirement for furnishers under Hawaii's UDAP law, and the Court has identified none.

More fundamentally, NCA's failure to pick up on these threads of inconsistencies do not otherwise constitute a deceptive act or practice.  As detailed in the Court's summary judgment Order, requiring Durham to take the step of verifying his identity was not misleading in any way; a reasonable person in Durham's shoes would not have understood that they needed to pay the debt based on NCA's statements.  *See Gomes v. Bank of Am., N.A.*, CV. No. 12-00311, 2012 WL 12883977, at *7 (D. Haw. July 25, 2012) (stating that a "representation, omission, or practice is considered 'material' if it involves information that is important to consumers and, hence, likely to affect their . . . conduct" (citation omitted)).  And without more, NCA's practice of requiring a debtor to substantiate a claim of identity theft in and of itself is not misleading.  For these reasons, although Durham's frustration that he had to

16

substantiate his identity theft claim is understandable, it is not actionable under Hawaii's UDAP statute.

While the "existence of an unfair or deceptive trade practice is ordinarily a question of fact," here, Durham's claims fail as a matter of law because there is no genuine dispute of material fact that the alleged actions were not materially deceptive. *Balthazar*, 109 Hawaiʻi at 78, 123 P.3d at 203. Because there is no legal basis for suggesting that the FCRA's reasonable investigation requirement should be mapped onto the Hawaiʻi UDAP law, and because NCA's requests that Durham substantiate his identity theft claims were not "deceptive" as a matter of law, the Court GRANTS NCA's summary judgment motion on Durham's state law UDAP claims under HRS § 480-2.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART NCA's motion for summary judgment as to Durham's state law claims.

IT IS SO ORDERED.

DATED: April 21, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
───────────────────────
Micah W.J. Smith
United States District Judge

Civil No. 23-00244 MWJS-WRP; *Demetre Durham v. National Credit Adjusters, LLC*; ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT